IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOVANIE RIOS, )
)
Plaintiff, )
)
vs. ) No. 09 C 7348
)
) Magistrate Judge Schenkier
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
Defendant. )

# MEMORANDUM OPINION AND ORDER[1]

In this social security disability insurance benefits appeal, plaintiff, Jovanie Rios ("Ms. Rios"), seeks remand of the final decision by the Commissioner of the Social Security Administration ("Commissioner") resulting in her ineligibility for Supplemental Security Income ("SSI") benefits. The Commissioner filed a cross-motion seeking affirmation of the ALJ's decision that payments into, and distributions from, the Jovanie Rios Trust Sub-Account ("Rios Trust") are unearned income and thus countable for purposes of determining whether Ms. Rios is eligible for SSI benefits. For the following reasons, we deny the Commissioner's motion (doc. # 21), we grant the plaintiff's motion (doc. # 17), and we reverse the Commissioner's final decision and remand pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion and Order.

---

[1]On February 23, 2010, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including the entry of final judgment (doc. ## 11, 15).

## I.

We begin with a summary of the administrative record and procedural history in this case. We set forth general background information, evidence concerning Ms. Rios's disabling injury, and Ms. Rios's resulting settlement agreement in Part A. In Part B, we discuss the creation of Ms. Rios's trust. Then, in Part C, we address the procedural history leading up to the ALJ's decision as well as the ALJ's written opinion and the action taken by the Appeals Council.

### A.

Ms. Rios was born on November 24, 1982 (R. 188). On June 26, 1984, Ms. Rios fell from a porch in her Chicago apartment complex, located at 2102-2108 West Concord Place (R. 14). Ms. Rios suffered head injuries as a result of the fall, causing organic brain damage (*Id.*). Ms. Rios's mother, Ms. Stein, sued Nina Machi individually and d/b/a/ N.C. Machi Management, Thomas Gillespie, and Dan Reber (R. 148), the owners and managers of the West Concord Place apartment complex (R. 152), seeking damages on behalf of Ms. Rios for her injuries.

On September 18, 1987, the Circuit Court of Cook County ("Circuit Court") entered an order approving a structured settlement to Ms. Rios (R. 147). Following the order, on September 23, 1987, the parties signed a Settlement Agreement and Release (R. 152). According to the terms of the settlement, the Aetna Casualty and Surety Company ("Aetna") paid a lump sum of $138,281.00 to Ms. Stein as Ms. Rios' legal guardian (R. 153). In addition to the initial lump sum payment, Aetna agreed to establish an Annuity to make monthly payments to Ms. Rios, when she reached the age of majority on November 24, 2000, for the rest of her life (R. 154). Shortly before the settlement was

finalized, a Safeco Application for a Single Premium Immediate Annuity was filed, establishing Aetna as the owner of the annuity and Ms. Rios as the Annuitant (R. 161).[2]

**B.**

On April 20, 2001, the Circuit Court issued an order appointing Ms. Stein as the guardian for the estate and person of Ms. Rios (R. 46). Two years later, on July 25, 2003, Ms. Stein entered into a Joinder Agreement for the Illinois Disability Pooled Trust ("IL Trust") as grantor (R. 51).

The IL Trust was created on July 17, 1998 by a Master Pooled Trust Agreement ("Master Agreement") between the Illinois Disability Association, as Settlor and Co-Trustee, and the LaSalle National Bank of Chicago, IL, as Corporate Co-Trustee (R. 78A). The Master Agreement was made pursuant to 42 U.S.C. § 1396p(d)(4)(C), 305 ILCS 5/12-1a, 89 Ill. Admin. Code § 120.347, and 760 ILCS 5/15.1 (*Id.*). In order to participate in the IL Trust, a grantor and a trustee must execute a "joinder agreement" (R. 78H). According to the terms of the Master Agreement, once a trust has been created by a joinder agreement, the trust is irrevocable (R. 78H). After a joinder agreement is executed, a trust sub-account is established for the beneficiary (*Id.*).

Pursuant to 42 U.S.C. § 1396p, amended August 10, 1993 by the Omnibus Budget Reconciliation Act, the IL Trust is a "supplemental needs trust" that allows beneficiaries the ability to pool their funds for investment purposes (R. 78C).[3] Because it is a supplemental needs trust, the existence of the IL Trust should not affect the availability of public or private assistance for

---

[2] It appears that Safeco Life Insurance Company then became responsible for making payments in accordance with the settlement agreement (R. 122-24).

[3] "A supplemental needs trust is a type of trust that limits the trustee's discretion as to the purpose of the distributions. This type of trust typically contains language that distributions should supplement, but not supplant, sources of income including SSI or other government benefits." Programs Operation Manual System ("POMS") § SI 01120.200(B)(13). POMS is an internal manual promulgated by the SSA, for SSA employees to use in processing claims for Social Security benefits (*see infra* at 8, n. 7).

3

beneficiaries (*Id.*). According to the Master Agreement, "[i]t is not the purpose nor objective of [the] Trust to provide for or to make expenditures for a Beneficiary's basic maintenance, support, medical, dental or therapeutic care, or any other appropriate care or service that may be paid for or provided by other sources" (R. 78D). The IL Trust is also designed so that the Illinois Disability Association, as Trustee, maintains sole discretion over distributions from the IL trust sub-accounts to beneficiaries (R. 78E). In order to secure distributions, a beneficiary, or his or her representative, must provide documentation to the Trustee for each distribution request (R. 78E).

After Ms. Stein entered into the Joinder Agreement for the IL Trust, the Circuit Court of Cook County issued a July 30, 2003 Order for Leave to Create a Trust Sub-Account in the Illinois Disability Pooled Trust ("Circuit Court order") (R. 49-50). The Circuit Court order, in part, amended the Joinder Agreement by adding the following language: "Guardian of the Estate shall direct Safeco Insurance Company to direct deposit all [A]nnuity amounts into the Rios Trust" (R. 50). On September 29, 2003, the Rios Trust, an IL Trust sub-account, was created for the benefit of Ms. Rios (R. 93).[4] According to the terms of the Joinder Agreement and Ms. Stein's direction, Safeco is currently making annuity payments in the amount of $2,214.19 into the Rios Trust (R. 153).

---

[4] The sole purpose of the Joinder Agreement was to create the Rios Trust within the IL Trust. If there had been an issue as to whether the money in the trust was a resource to Ms. Rios, the Joinder Agreement would be relevant to determine whether the trust was revocable or irrevocable. However, the SSA Reconsideration Determination stated that money held in the trust was not a resource to Ms. Rios while it is held in the trust (R. 15). Therefore, the question of whether the trust is revocable or irrevocable is not before this Court. As such, the Joinder Agreement is only relevant to the issue of whether money distributed from the Rios Trust should be considered countable income for the purpose of determining SSI eligibility.

4

## C.

Ms. Rios submitted an application for SSI benefits due to her disability on August 31, 2004 (R. 188-90). In evaluating a claim for SSI benefits, the SSA looks not only at whether the applicant is disabled, as defined in the Social Security Act, 42 U.S.C. § 1382c, but also at whether the applicant's available income and resources exceed the maximum amount allowed under the statute. 42 U.S.C. § 1382(a). The parties do not dispute that an applicant is ineligible for social security benefits if his or her resources exceed $2,000.00 or if his or her income is more than $2,000.00 per month (R. 17). The SSA defines income as "anything you receive in cash or in kind that you can use to meet your needs for food and shelter." 20 C.F.R § 416.1102. The IL Trust is designed specifically so that money held in trust sub-accounts, as well as funds distributed from the sub-accounts trust, do not "displace public or private financial assistance that may otherwise be available to a Beneficiary" (R. 78D). The parties do not dispute that money in the Rios Trust is not a resource to Ms. Rios while it is held in the trust.

On November 12, 2004, the SSA issued a Disability Determination and Transmittal declaring that Ms. Rios was disabled, with a primary diagnosis of "mental retardation" (R. 21). After her application was denied,[5] Ms. Rios requested reconsideration, claiming that payments made into the Rios Trust should not be considered "income" for the purpose of determining her SSI benefit eligibility (R. 24). In response to Ms. Rios's request, the SSA issued a notice of reconsideration on January 9, 2006, affirming the SSA's initial determination. According to the notice of reconsideration, money that is placed into the Rios Trust is income (R. 25). The notice went on to

---

[5]The denial of Ms. Rios's initial SSI application is not included in the administrative record.

say that while the money held in the trust is not a resource, "funds that are withdrawn from the trust are income" to Ms. Rios (*Id.*).

Following the SSA's notice of reconsideration, Ms. Rios requested a hearing before an ALJ (R. 28-29). The first hearing before ALJ Lovert Basset took place on December 21, 2006, during which testimony was received from Jacqueline Cruz Stein, Ms. Rios's mother and the legal guardian of her person (R. 242). A second hearing was held on July 6, 2007 (R. 260).[6] After the hearings, the ALJ issued a written decision on July 30, 2007 (R. 14-16). In that decision, the ALJ identified two issues in this case: (1) whether Ms. Rios had a resource making her ineligible for SSI payments; and (2) whether Ms. Rios had a resource that was deposited into a trust account, making her ineligible for SSI benefits (R. 14). The ALJ first noted that, as of September 29, 2003, Ms. Rios's settlement award payments were being made into the Rios Trust (*Id.*). The ALJ then acknowledged the SSA's Reconsideration Determination that the settlement proceeds, while sitting in the Rios Trust, were not a resource for Ms. Rios (R. 15). The ALJ also pointed out the SSA's additional conclusion that settlement proceeds paid into the Rios Trust were income, as well as any money withdrawn by Ms. Rios from the Rios Trust (*Id.*).

The ALJ then stated that "[p]ayments from the injury unwithdrawn settlement agreement are countable unearned income" (*Id.*). To support this proposition, the ALJ cited 20 C.F.R. § 416.1120, which states, in relevant part, that "[u]nearned income is all income that is not earned income." Based on this, the ALJ concluded that all payments made into the Rios Trust are income (*Id.*). He

---

[6]It appears the second hearing was scheduled in error. The ALJ made the following statement at the beginning of the hearing: "I have to apologize. I already decided this case in Jovanie's favor. I don't know why they scheduled this. It was, someone didn't realize that this case should have been given to a decision writer for workup and I had decided it back on April 15th" (R. 260).

also found that any money withdrawn by Ms. Rios from the Rios Trust would be considered income (*Id.*). The ALJ's decision rendered Ms. Rios ineligible for SSI benefits (R. 17).

After the ALJ issued his decision, the SSA sent Ms. Rios a Notice of Award (R. 17-20). The SSA concluded that, in light of the ALJ's decision, Ms. Rios's income exceeded the $2,000.00 per month limit thus making her ineligible for SSI benefits (R. 17). On October 4, 2007, Ms. Rios filed a request for review of the ALJ's decision (R. 8-9). In that request, Ms. Rios argued that payments paid directly into the Rios Trust should not be considered income for the purpose of calculating SSI eligibility (*Id.*).

Although the Appeals Council found "no reason . . . to review the Administrative Law Judge's decision," the Council did discuss the reasons Ms. Rios claimed as the basis for challenging the ALJ's decision (R. 4-5). The Appeals Council concluded that the "evidence reflects that the assignment of [Ms. Rios's monthly annuity payments] is revocable" (R. 5). This conclusion was based on the Appeals Council's interpretation of the July 30, 2003 Court Order, which the Council took to mean "that the guardian has the authority to direct and redirect the assignment of [Ms. Rios's monthly annuity] payments" (*Id.*). The Appeals Council's denial of review also stated that "the Administrative Law Judge's decision is the final decision of the Commissioner of Social Security" (R. 4).

## II.

Generally, when the Appeals Council denies review, the ALJ's decision becomes subject to judicial review as the final decision of the Commissioner. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). On the other hand, if the Appeals Council reviews the ALJ's decision, then the Appeals

Council's decision is subject to judicial review as the Commissioner's final decision. *White v. Sullivan,* 965 F.2d 133, 136 (7th Cir. 1992); *Bauzo v. Bowen,* 803 F.2d 917, 921 (7th Cir. 1977).

This case presents a hybrid situation. The Appeals Council denied review and expressly stated that the ALJ's decision was the Commissioner's final decision (R. 4). However, the Appeals Council also considered Ms. Rios's reason for disagreeing with the ALJ's decision—she believed that the assignment of her monthly annuity payments into the Rios Trust was irrevocable and thus the payments should not have been considered income (R. 5). The Appeals Council, in rejecting this argument (R. 5), undertook an analysis that extended beyond the scope of the ALJ's decision, which did not address the question of revocability (R. 14-16). Furthermore, the Commissioner's Memorandum in Support of Cross-Motion for Summary Judgment defended the ALJ's decision on grounds discussed only by the Appeals Council, suggesting that the Commissioner's final decision includes the additional reasoning provided by the Appeals Council (Def. Mem. 4). Therefore, we review the ALJ's written decision as well as the additional reasoning provided by the Appeals Council in their denial of review.

When reviewing the Commissioner's decision, this Court is asked to determine whether the ALJ's findings are supported by substantial evidence. 42 U.S.C. § 405(g). The Seventh Circuit has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009) (internal citations and quotations omitted). The Court may not substitute its own judgment for that of the ALJ. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Although this standard of review "is deferential, it is not abject." *Parker v. Astrue,* 597 F.3d 920, 921 (7th Cir. 2010). An ALJ "must articulate at some level his analysis of the evidence." *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.

1994) (quoting *Ray v. Bowen,* 843 F.2d 998, 1002 (7th Cir.1988)). In doing so, the ALJ must enunciate a "logical bridge" demonstrating how the evidence supports his ultimate conclusion. *Parker*, 597 F.3d at 921. The Court "cannot uphold an administrative decision that fails to mention highly pertinent evidence, or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker*, 597 F.3d at 921.

The ALJ is required to provide a "logical bridge" with "minimal articulation" so that a reviewing judge can determine whether substantial evidence existed to support the ALJ's conclusion. *See See Zitrawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (logical bridge requirement); *Diaz v. Chafer*, 55 F.3d 300, 307 (7th Cir. 1995) (minimal articulation requirement). Meaningful review requires, for example, that an ALJ "articulate the reasons for accepting or rejecting entire lines of evidence." *Herron*, 19 F.3d at 333. In this case, where the issue is question of law, the ALJ must still provide a logical bridge to demonstrate how the evidence contained within the record supports the ALJ's ultimate conclusion. The ALJ must articulate a sufficient "logical bridge from the evidence to the conclusion" so this Court can assess whether the decision was supported by substantial evidence. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir.2000). Even with a sufficiently articulated "logical bridge," this Court is not required to accept the ALJ's decision if it finds that the ALJ made an error of law. *Schmoll v. Harris,* 636 F.2d 1146, 1150 (7th Cir.1980).

## A.

Ms. Rios claimed eligibility for SSI benefits under 42 U.S.C. § 1382 (2006). A disabled person is eligible for SSI benefits if his or her income and resources do not exceed $2,000.00 each month (R. 17). The ALJ deemed payments into and out of the Rios Trust to be income to Ms. Rios (R. 14-16). Since monthly annuity payments were being made into the Rios Trust in the amount of

$2,214.19 per month (R. 153), the ALJ's decision rendered Ms. Rios ineligible for SSI benefits (R. 17).

To determine whether the annuity payments are "income" for purposes of SSI eligibility, the ALJ was required to first determine whether the assignment of payments to the Rios Trust was revocable. Revocability of payments paid into the Rios Trust is a matter of federal law and federal regulations. *See* POMS § SI 01120.200(G)(1)(d).[7] Federal law and federal regulations also govern whether money distributed from the Rios Trust is considered unearned income for SSI eligibility purposes. *See* 20 C.F.R § 416.1102. This determination also requires interpretation of the trust instrument, which is governed by Illinois state law (R. 89).

According to the federal social security regulations, legally assignable annuity payments made into a trust are generally considered unearned income. 20 C.F.R. § 416.1121(a); POMS § SI 01120.200(G)(1)(d). An exception exists, however, if the annuity payments have been irrevocably assigned to a trust. POMS § SI 01120.200(G)(1)(d). An irrevocable assignment includes "payments paid directly into a trust as a result of a court order." *Id.*

## B.

We begin with an analysis of the ALJ's written decision. Two of the questions before the ALJ were: (1) whether payments into the Rios Trust were countable unearned income for SSI eligibility purposes; and (2) whether money distributed from the Rios Trust should be considered

---

[7] "The POMS is a handbook for internal use by employees of the Social Security Administration." *Parker v. Sullivan*, 891 F.2d 185, 189 n. 4 (7th Cir.1989). Both Ms. Rios and the government cite to the POMS as the relevant authority. The government supports use of the POMS by quoting *Washington Dept. of Social Servs. v. Keffeler*, 537 U.S. 371, 385 (2003), as stating "[w]hile the administrative interpretations [POMS] are not products of formal rulemaking, they nevertheless warrant respect . . ." (Defendant's memorandum in Support of Cross-Motion for Summary Judgment, 4). The SSA Appeals Council also relies on POM § 01120.200G in upholding the ALJ's determinations (R. 5). Neither side quarrels with the use of POMS here, or offers other authority under which to decide the disputed issue in this case.

countable unearned income for SSI eligibility purposes. The answer to the first question is governed by federal law and federal regulations. The answer to the second question is governed by federal law and federal regulations, as well as the Joinder Agreement and Master Agreement. As noted earlier, both of these agreements enabled the creation of the Rios Trust.

The ALJ first concluded that payments made directly into the Rios Trust were countable unearned income (R. 15). The ALJ's written decision indicates that this conclusion is supported by 20 C.F.R. § 416.1120, which defines unearned income as "all income that is not earned income" (*Id.*). The ALJ's decision, however, does not include any discussion of whether the assignment of payments to the Rios Trust was revocable (R. 14-16). Revocability is significant because, according to the POMS, payments assigned to a trust are only considered income for SSI purposes if the assignment is revocable. POMS § SI 01120.200(G)(1)(d).

The ALJ also found that money "withdrawn" from the Rios Trust would be countable unearned income for SSI eligibility purposes (R. 15). The ALJ did not address the seeming contradiction between this conclusion and the federal regulations' definition of income (*Id.*). According to the regulations, income includes any cash that can be used to meet the recipient's food and shelter needs. 20 C.F.R. § 416.1102. Under the terms of the Master Agreement and Joinder Agreement, however, money distributed to Ms. Rios from the Rios Trust could not be used to support her or meet her basic needs (R. 78D-78E). It is unclear, from the ALJ's decision, how money distributed to Ms. Rios from the Rios Trust could be considered income, since the money could not be used for food or shelter.

Furthermore, the ALJ's use of the word "withdrawn" suggests that the ALJ may have misunderstood how the Rios Trust functions (R. 16). The Rios Trust does not operate like a bank

11

account from which an account-holder can withdraw funds at will, and for any purpose. Instead, the Illinois Disability Association, as Trustee, retains sole discretion over distributions made from the Rios Trust (R. 78E). In order to access funds held in the Rios Trust, Ms. Rios, as beneficiary, must "provide sufficient documentation for each distribution request" (*Id.*). The Trustee is also directed "not to exercise any discretionary power . . . in a manner which would disqualify a Beneficiary from qualifying for federal, state or local government benefits or programs" (*Id.*). Therefore, the Trustee is only allowed to distribute funds to Ms. Rios for purposes that would not disqualify her from SSI benefit eligibility.

We conclude, in light of the applicable laws and federal regulations, that the ALJ's decision does not show the analytical path he used to reach his decision. Ordinarily, having found this, we would remand to the ALJ so that he could articulate the "logical bridge" between the evidence in the record and the legal requirements for his conclusion. *See Parker,* 597 F.3d at 921. In rare cases, however, further articulation is unnecessary to enable the Court to perform its review function. This is one of those cases. The fundamental questions here are whether the monthly and periodic annuity payments into the Rios Trust, or funds distributed from that trust, are income to Ms. Rios. The answers to these questions are matters of law. Whether payments made into the Rios Trust are countable income turns on the interpretation of the July 30, 2003 Court Order (R. 49-50). Interpretation of a court order is a matter of law that is not unique to social security cases; and it is a matter on which this Court has no less experience than the ALJ or Appeals Council. Whether money distributed from the Rios Trust is countable income turns on the plain language of the trust document, which is unambiguous and which the Court thus may construe as a matter of law. *Quake Construction, Inc. v. American Airlines, Inc.,* 141 Ill.2d 281, 288 (Ill.1990) ("If no ambiguity exists

in [a contract], the parties' intent must be derived . . . as a matter of law, solely from the writing itself").

For the reasons set forth below, we conclude that the ALJ's conclusions on these matters was incorrect as a matter of law. Moreover, the additional reasoning in the Appeals Council's denial of review, while providing at least part of the "logical bridge" missing from the ALJ's written decision, is also wrong as a matter of law.

### 1.

We initially address the Commissioner's conclusion regarding the assignment of annuity payments paid into the Rios Trust. As previously discussed, the ALJ first concluded that money paid into the Rios Trust was considered income to Ms. Rios for SSI eligibility purposes (R. 15). The only support provided for this conclusion is a citation to 20 C.F.R. § 416.1120 (*Id.*). The ALJ also found that any money withdrawn from the Rios Trust would be considered income to Ms. Rios as well (*Id.*). The ALJ did not cite any evidence, law, or regulation to support this conclusion. Although the ALJ did not address the issue of whether the assignment of the annuity payments was revocable, the Appeals Council based its denial of review on this issue. The question of whether the monthly and periodic annuity payments made into the Rios Trust are income to Ms. Rios depends solely on whether the assignment of those payments was revocable.

In the September 17, 2009 denial of Ms. Rios's request for review of the ALJ's decision, the Appeals Council relied on language in the July 30, 2003 Circuit Court order (R. 5). The language pointed to by the Appeals Council states that the "*[g]uardian of Estate shall direct Safeco Insurance Company to direct deposit all annuity amounts into the Jovanie Rios Trust Sub-Account*" (R. 50)

(emphasis added).[8] The Appeals Council interpreted this clause to mean that Ms. Rios's guardian has the authority to both direct and redirect assignment of Ms. Rios's settlement payments (R. 5). Based on this interpretation, the Appeals Council concluded that the "evidence indicates that assignment of the annuity payments to the trust is revocable because [Ms. Rios's] guardian has authority to direct assignment of these payments" (R. 5).

We fail to see how the July 30, 2003 Circuit Court order's language means anything other than that the assignment of annuity payments to Rios Trust is irrevocable. The POMS discusses when legally assignable payments should be considered income. According to the Manual, payments paid directly into a trust as a result of a court order [are irrevocable and therefore] are not income." POMS § SI 01120.200(G)(1)(d).

Illinois law is also instructive on the interpretation of the Circuit Court's July 2003 order. When interpreting a court order, Illinois courts have taken a "common sense" approach. *Doe v. Lutz*, 625 N.E.2d 325, 329 (Ill. App. Ct. 1993). Therefore, "an order should be construed reasonably so as to give effect to the discernible intent of the court." *People v. Ryan*, 631 N.E.2d 348, 351 (Ill. App. Ct. 1994). When attempting to determine a court's intent in an order, the entire record before that court should be considered. *Id.*

---

[8]The government argues that the Circuit Court's July 2003 order should not be considered because the Circuit Court did not follow the binding statutory requirements set forth in the Illinois Structured Settlement Protection Act, 215 ILL. COMP. STAT. 153/15 (Def. Mem. in Support of Cross-Motion, 6). Neither the ALJ nor the Appeals Council relied on this argument. The *Chenery* doctrine "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself has not embraced. *Parker*, 597 F.3d at 922 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943). Therefore, we do not address this argument.

For her part, Ms. Rios asks us to consider a subsequent Circuit Court order dated April 15, 2005 (Pl.'s Mem. at 4). We deem it unnecessary to do so, since we find the July 2003 order conclusive on the issue of revocability.

The Circuit Court's July 30, 2003 order amended the Joinder Agreement (R. 49-50). The court order also referred to the Master Agreement. Therefore, a "common sense" approach would have us consider the Master and Joinder Agreements as well as the language in the July 30, 2003 order. We begin with the language contained in the court order. "[g]uardian of Estate *shall* direct Safeco Insurance Company to direct deposit all annuity amounts into the Jovanie Rios Trust Sub-Account" (R. 50) (emphasis added). In cases involving statutory interpretation, Illinois courts construe the word shall "as a clear expression of . . . [an] intent to impose a mandatory obligation." *People v. O'Brien*, 754 N.E.2d 327, 330 (Ill. 2001). We see no reason to construe the word "shall" differently when used in a court order. Additionally, the court order only indicates one location in which to deposit the annuity payments—the Rios Trust. Had the court used permissive language, such as the word "may," then one could argue that Ms. Rios's guardian had discretion over whether to direct the annuity payments to the Rios Trust. A similar argument could be made had the court specified an alternative repository for the annuity payments. However, the court's use of the word "shall," combined with the fact that no alternative repository was named by the court, demonstrates that the court intended to irrevocably assign Ms. Rios's monthly annuity payments to the Rios Trust.

The Master and Joinder Agreements further support the conclusion that the Circuit Court's July 30, 2003 order irrevocably assigned Ms. Rios's annuity payments to the Rios Trust. *First*, the Rios Trust is designed specifically to allow Ms. Rios to continue receiving federal, state, and local benefits (R. 78D-78E). *Second*, the court order amended the Joinder Agreement but, in doing so, said that if the restoration clause included in the amendment resulted in Ms. Rios becoming ineligible for government benefits then the clause would become null and void (R. 50). This indicates the Circuit Court's intent not to amend the Joinder Agreement in any way that might lead

15

to Ms. Rios's ineligibility for government benefits. Consistent with this reasoning, we conclude that the Circuit Court intended the Joinder Agreement amendment regarding the annuity payments to be an irrevocable assignment of those payments to the Rios Trust.

**2.**

Next we address the Commissioner's conclusion that distributions from the Rios Trust to Ms. Rios are also considered countable income. The ALJ stated that "[i]f withdrawals are made from the trust these amounts would also be considered income to Jovanie" (R. 15). However, the record shows that money distributed from the Rios Trust cannot be used for food or shelter (R. 63). Money cannot be considered income to Ms. Rios if she is not permitted, according to the terms of the Master Agreement and Joinder Agreement, to use it for food and shelter (R. 78D, 63). Thus, the ALJ had no legal basis upon which to draw the conclusion set forth above.[9]

**CONCLUSION**

For the reasons set forth above, the Court directs the Clerk of the Court to enter judgment denying defendant's motion for summary judgment (doc. # 21) and granting plaintiff's motion (doc. # 22). We reverse the Commissioner's final decision pursuant to sentence four of 42 U.S.C. § 405(g). This reversal eliminates the sole bases on which the Commissioner found Ms. Rios

---

[9]The Appeals Council's denial of review did not discuss whether distribution to Ms. Rios from the Rios Trust should be considered countable income.

ineligible for benefits. We therefore remand the case with the direction that benefits be awarded to Ms. Rios.

                                **ENTER:**

                                _____
                                **SIDNEY I. SCHENKIER**
                                **United States Magistrate Judge**

Dated: November 15, 2010